**IN THE UNITED STATES DISTRICT COURT**
**NORTHEREN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LATREECE JONES, individually, and on behalf all others similarly situated, | ) ) | Civil Action No. 1:21-cv-3217 |
| | ) | |
| Plaintiff, | ) | Honorable Martha M. Pacold |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER GROUP, | ) ) | |
| | ) | |
| Defendant | ) | |

---

### NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER GROUP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper Group ("Nationstar") states as follows in support of its Motion to Dismiss Plaintiff's Complaint pursuant to the first-to-file rule and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### <u>NATURE OF THE MATTER BEFORE THE COURT</u>

This is one of many putative class actions filed across the country arising out of allegations that Nationstar or a third party (allegedly acting as Nationstar's agent) erroneously withdrew extra mortgage payments from borrowers' bank accounts in April 2021 via Automated Clearing House ("ACH") debit transactions. Plaintiff Latreece Jones ("Plaintiff" or "Ms. Jones") tacitly acknowledges that this error was corrected, but nevertheless claims that she was left "with little to no money for other necessary expenditures" for a period of time and that "the amount of interest that Plaintiff earned on funds in her [interest-bearing] account" was reduced. Complaint ("Compl.") ¶¶ 23, 25.

Notwithstanding the fact that the error was corrected, borrowers across the country have

1

filed putative class actions regarding these erroneous debits.[1]  However, Ms. Jones cannot represent the putative class in this case because her lawsuit is duplicative of an action **filed by the same class counsel one month earlier** in the Western District of North Carolina, which asserts claims on behalf of an identical nationwide putative class of consumers based on the same factual allegations underlying this action.  Accordingly, the Court need not consider the sufficiency of the allegations in Plaintiff's Complaint because, under the first-to-file rule, Plaintiff's Complaint must be dismissed in the interest of judicial efficiency and to avoid inconsistent verdicts.

Moreover, even if this Court were to decline to apply the first-to-file rule, Plaintiff's claims still fail under Rule 12(b)(6).  First, Plaintiff's negligence claim fails because (i) Plaintiff fails to plead that Nationstar owed her any cognizable duty under Illinois law, and (ii) the economic loss rule bars Plaintiff's claims.  Second, Plaintiff's trespass to chattels claim fails because Plaintiff fails to plead facts establishing her right to immediately possess the specific funds that Nationstar allegedly withdrew.  Third, Plaintiff's breach of fiduciary duty claim fails because Plaintiff has not pled facts sufficient to overcome the rule in Illinois that banking institutions do not owe borrowers a fiduciary duty absent extraordinary circumstances.  Fourth, Plaintiff's claim under the Real Estate Settlement Procedures Act ("RESPA") fails because Plaintiff only asserts violations of 12 U.S.C. § 2609, which does not create a private right of action.  Finally, Plaintiff's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") fails because Plaintiff has not alleged the required intent.  For these reasons, Plaintiff's Complaint must be dismissed in its entirety.

---

[1] *See Deveraux v. Nationstar,* C.D. Cal., Case No. 5:21-cv-873; *Dugan v. Nationstar*, M.D.N.C., Case No. 1:21-cv-341; *Padalecki v. Nationstar*, D. Nev., Case No. 2:21-cv-938; *Thompson v. Nationstar*, D. Nev., Case No. 2:21-cv-720; *Keil v. Nationstar*, N.D.N.Y, Case No. 6:21-cv-0069; *Miller v. Nationstar*, M.D. Fla., Case No. 8:21-cv-1349; *Dehner v. Nationstar*, E.D. Mich., Case No. 1:21-cv-11460; *Friday v. Nationstar*, M.D.N.C., Case No. 1:21-cv-00165.

## STATEMENT OF THE FACTS ALLEGED

Plaintiff's home in Cook County, Illinois, is secured by a mortgage which is serviced by Nationstar. Compl. ¶¶ 6, 15. Plaintiff asserts that she never authorized Nationstar to make automatic, recurring payments on her loan. Compl. ¶ 17. Instead, Plaintiff alleges that each month she would either (a) call Nationstar and provide it with payment information or (b) send a check. *Id*. Plaintiff contends that, in early 2021, Nationstar made an unauthorized withdrawal from her bank account equivalent to the amount of one monthly mortgage payment without notice, authorization, or consent. Compl. ¶¶ 21, 22.

As a result, Plaintiff asserts that she (i) lost time she could have spent working to tracking her account balance; (ii) suffered mental and emotional anguish; (iii) received reduced interest in her interest-bearing account; and (iv) had "little to no money for other necessary expenses." Compl. ¶¶ 23-26. Plaintiff further alleges that she "wondered whether she would be able to afford basic necessities and satisfy her other financial obligations," but does not allege that she actually had any financial obligations that she failed to fulfill during the period the monthly mortgage payment had been erroneously transferred. Compl. ¶ 23. Furthermore, although the Complaint does not expressly state whether and when the funds were returned to Plaintiff's account, Plaintiff notably does not seek return of the funds. *Id.*

Plaintiff contends that the allegedly erroneous debit from her account was part of a larger, systemic error impacting thousands of borrowers. Compl. ¶¶ 10, 32. Specifically, Plaintiff asserts that, in early 2021, Nationstar or its alleged agent submitted hundreds of thousands of improper duplicate payments drafts, resulting in Nationstar collecting (prior to the error being corrected) tens of thousands of unauthorized mortgage loan payments. Compl. ¶ 32.

3

Based on these allegations, Plaintiff asserts the following claims: (1) negligence; (2) trespass to chattels; (3) breach of fiduciary duty; (4) violation of RESPA; and (5) violation of the ICFA. Plaintiff asserts these claims on behalf of a putative class of:

> All persons (1) who have (or had) a loan serviced by Defendant during the applicable statute of limitations period, (2) who authorized Defendant to withdraw funds from their bank accounts in connection with their Loan Payment obligations, and (3) whose bank accounts were charged by Defendant in excess of the amount that they authorized, consented to, and/or approved.

(the "Proposed Class"). Compl. ¶ 27. Plaintiff also asserts claims on behalf of a subclass of those putative class members "whose loan is for real property located in the State of Illinois, or who were residents of Illinois during the time period relevant to this action." Compl. ¶ 29.

## STANDARD OF REVIEW

### A.     First to File Rule

The "first-to-file" doctrine, also referred to as federal comity, "provides that a district court may, for purposes of judicial administration, dismiss or stay a suit when it is duplicative of a parallel action that is already pending in another federal court." *Guill v. Alliance Res. Partners, L.P.*, 2017 WL 1132613, at *2 (S.D. Ill. Mar. 27, 2017). Indeed, the Seventh Circuit has emphasized that the first-to-file doctrine is part of district courts' "inherent power to administer their dockets so as to conserve scarce judicial resources" by avoiding duplicative litigation. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). Accordingly, in the absence of "compelling circumstance[s]," there is a "rebuttable presumption that the first case that establishes jurisdiction should be allowed to proceed, and the second case be dismissed." *Chriswell v. Big Score Entm't, LLC*, 2013 WL 315743, at *3 (N.D. Ill. Jan. 28, 2013).

For the first-to-file doctrine to apply, the moving party must demonstrate the following factors are satisfied: (1) the similar identity of the parties, (2) the similarity of the claims and issues

involved, and (3) the similarity of the relief sought. *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir. 1993) ("[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions."). In analyzing the similarity of the parties in putative class actions, "the focus of the substantially similar inquiry is on the putative class members rather than the named plaintiffs themselves." *Nicholson v. Nationstar Mortg. LLC of Delaware*, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018). Likewise, "[c]laims need not be identical so long as the issues substantially overlap." *Lynn Scott, LLC v. Grubhub, Inc.*, 2021 WL 1088304, at *2 (N.D. Ill. Mar. 22, 2021).

### B. Rule 12(b)(6)

To withstand a Rule 12(b)(6) motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint must plead more than labels or a formulaic recitation of the elements of a cause of action. *Twombly,* 550 U.S. at 555. The facts alleged must demonstrate "facial plausibility," which requires more than the "sheer possibility" of liability or allegations "merely consistent with" liability. *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### ARGUMENT

### I. THE COURT MUST DISMISS THIS ACTION PURSUANT TO THE FIRST-TO-FILE RULE.

As an initial matter, this Court should decline to exercise jurisdiction over this action and dismiss it in light of the fact **the same class counsel** has filed an action based on the same factual allegations **one month earlier**, asserting claims on behalf of an **identical** nationwide putative class. *See Friday, et al. v. Nationstar,* W.D.N.C., Case No. 1:21-cv-00165 (the "*Friday* Action").

Indeed, there is no dispute that the *Friday* Action was filed prior to this action. The *Friday* Action was filed on May 17, 2021. *See* Request for Judicial Notice ("RJN"), Ex. A (*Friday* Complaint). This action was filed on June 15, 2021. *See* ECF No. 1. Although the *Friday* Complaint was filed in state court and later removed, the date of removal is immaterial to the first-to-file analysis. *See First Health Grp. Corp. v. Motel 6 Operating L.P.*, 2000 WL 1010193, at *2 (N.D. Ill. July 14, 2000) (explaining that under a "first to file in federal court" rule, an action originally filed in state court and removed to federal court "must be treated as though it started in federal court as of the date it was filed in state court"); *see also Wakaya Perfection, LLC v. Youngevity Int'l, Inc.,* 910 F.3d 1118, 1126 (10th Cir. 2018) (noting that for purposes of first-to-file analysis, it is proper to "focus on the date that the complaint had been filed in state court rather than the removal date.").

For the first-to-file doctrine to apply, the moving party must demonstrate the following factors are satisfied: (1) the similar identity of the parties, (2) the similarity of the claims and issues involved, and (3) the similarity of the relief sought. *Serlin*, 3 F.3d at 223. Here, all three elements are satisfied. Thus, the Court must dismiss this case to promote judicial efficiency and eliminate the risk of inconsistent verdicts.

### A. The Proposed Class in the *Friday* Action fully encompasses Plaintiff's proposed class.

The first factor of the first-to-file analysis—similarity of the parties—is satisfied here. The proposed class pled in the *Friday* Action is a national class of consumers that is identical to the national class Ms. Jones seeks to represent. Thus, there is clearly similarity of parties. *See Nicholson*, 2018 WL 3344408 at *5 (finding "similar parties" element satisfied where defendant Nationstar was "identical in each action" and there was substantial overlap between the putative classes in the different actions); *Guill*, 2017 WL 1132613, at *3 (applying first-to-file rule where

6

"two cases include[d] an identical claim on behalf of the same proposed class against the same

defendants"); *see also Lynn Scott*, 2021 WL 1088304, at *2 ("[I]n the case of class action lawsuits,

the named plaintiffs need not be the same so long as the putative classes are substantially similar.").

Plaintiff's claims are based on allegations that Nationstar triggered multiple withdrawals

from her and putative class members' bank accounts without authorization. Compl. ¶ 10. She

seeks to represent a national class consisting of the following:

> All persons (1) who have (or had) a loan serviced by Defendant during the
> applicable statute of limitations period, (2) who authorized Defendant to withdraw
> funds from their bank accounts in connection with their Loan Payment
> obligations, and (3) whose bank accounts were charged by Defendant in excess
> of the amount that they authorized, consented to, and/or approved.

Compl. ¶ 27. The plaintiff in the *Friday* Action seeks to represent an **_identical_** national

class. *See* Ex. A, at 5. Based on the identical class definitions in this Action and the

*Friday* Action, and the parties are clearly sufficiently similar such that the first-to-file

rule must be applied.

**B.    The issues raised in the _Friday_ Action are substantially similar to the issues
       raised in the Complaint.**

The second element of the first-to-file analysis—similarity of claims and issues—is also

satisfied here. Under Illinois law, "there need not be complete congruence of the issues among

cases to invoke the first-to-file rule: there only needs to be substantial overlap of the issues between

them for the rule to apply." *Nicholson*, 2018 WL 3344408, at *7; *see also Humphrey v. United

Healthcare Serv., Inc.*, 2014 WL 3511498, at *2 (N.D. Ill. July 16, 2014) ("Claims need not be

identical to satisfy the same issues requirement of the first-to-file doctrine. Rather it is sufficient

if the issues substantially overlap.") (internal quotations and citations omitted); *Preci-Dip, SA v.

Tri-Star Elec. Intern., Inc.*, 2008 WL 5142401, at *2 (N.D. Ill. Dec. 4, 2008) ("The claims in the

two suits need not be identical to satisfy the 'same issues' requirement of the first-to-file doctrine.").

Here, both actions make virtually identical allegations that the putative class members authorized electronic payments expecting that only one withdrawal would occur. *Compare* Compl. ¶¶ 8-9, 35, 39 *with Friday* Complaint ¶ 7-8, 19-20. Both actions allege that Nationstar then erroneously triggered multiple withdrawals in early 2021, resulting in two or more charges hitting the putative class members' bank accounts. *Compare* Compl. ¶¶ 10 (". . . Defendant triggered *multiple* withdrawals from Plaintiff's and Class members' bank accounts.") *with Friday* Complaint ¶ 9 (". . . Defendant triggered *multiple* withdrawals from Plaintiffs' and Class members' bank accounts."). Both actions make identical allegations that these additional debits were unauthorized and left the putative class members with limited purchasing power and, in some cases, overdraft fees. *Compare* Compl. ¶¶ 11-13 *with Friday* Complaint ¶¶ 10-12. Both putative class representatives allege these erroneous additional debits occurred in their accounts. *Compare* Compl. ¶¶ 21-22 *with Friday* Complaint ¶¶ 19-20. Moreover, the two actions ask identical "common questions" in attempting to lay a foundation for class adjudication. *Compare* Compl. ¶ 34.f ("Whether Defendant breached its duty to Plaintiffs and Class members to utilize the financial information provided to it by Plaintiffs and Class members responsibly and appropriately, and within the confines of the consent, authorization, and approval given to Defendant by Plaintiff and Class members, when it withdrew additional funds from Plaintiff's and Class members' bank accounts[.]") *with Friday* Compl. ¶ 30(f) ("Whether Defendant breached its duty to Plaintiffs and Class members to utilize the financial information provided to it by Plaintiffs and Class members responsibly and appropriately, and within the confines of the consent, authorization, and approval

given to Defendants by Plaintiffs and Class members, when it withdrew additional funds from Plaintiffs' and Class members' bank accounts[.]").

Thus, the central question in both cases will be whether Nationstar is liable for the unauthorized withdrawals from borrowers' bank accounts in April 2021. Additionally, both actions involve similar, and in some cases, identical causes of action. Here, Plaintiff asserts claims for negligence, trespass to chattels, breach of fiduciary duty, and violations of the Real Estate Settlement Procedures Act and the Illinois Consumer fraud and Deceptive Trade Practices Act. *See* Compl. ¶¶ 38-118. Similarly, the plaintiff in *Friday* asserts claims for negligence, trespass to chattels, breach of fiduciary duty, conversion and civil larceny. *See Friday* Compl. ¶¶ 35-110. This too weighs in favor of applying the first-to-file rule. *See Lynn Scott*, 2021 WL 1088304, at *2 ("Claims need not be identical so long as the issues substantially overlap."); *Nicholson*, 2018 WL 3344408, at *8 (holding same claims and issues requirement satisfied where "propriety of Defendant's inspection fees charged on defaulted reverse mortgages forms the core allegation in both cases"); *Askin v. Quaker Oats Co.*, 2012 WL 517491, at *4 (N.D. Ill. Feb. 15, 2012) ("As long as the underlying facts are the same, as is the case here, the fact that the two complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis."). Accordingly, the claims and issues here and in the *Friday* Action sufficiently overlap for purposes of the first-to-file doctrine.

### C. The relief sought in *Friday* is identical to the relief sought by the Complaint.

Finally, the third element of the first-to-file analysis—similar relief—is also satisfied here. Like the requirements of similar parties and claims and issues, the available relief need only "substantially overlap between the two actions, even if [it is] not identical." *Nicholson*, 2018 WL 3344408, at *5. Here, like the *Friday* Plaintiffs, Plaintiff seeks class certification, actual, statutory, and compensatory damages, and attorney's fees. *Compare* Compl., Prayer for Relief *with Friday*

Compl., Prayer for Relief. The prayers for relief in both actions are virtually identical, and unquestionably sufficiently similar for the purposes of the first-to-file rule. *See Askin*, 2012 WL 517491, at *5 ("Otherwise, the respective prayers for relief are nearly identical; both seek class certification, injunctive relief, disgorgement, restitution, and compensatory and punitive damages."). Accordingly, the third element of the first-to-file analysis is satisfied.

### D. In the interest of judicial efficiency, the Court should apply the first-to-file rule.

Courts have made clear that application of the first-to-file rule is founded upon "comity, efficiency, and uniformity." *Guill*, 2017 WL 1132613, at *2; *see also Askin v. Quaker Oats Co.*, 2011 WL 5008524, at *4 (N.D. Ill. Oct. 20, 2011) ("[T]he first-to-file rule exists to prevent duplicative litigation and to minimize waste."); *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1009 (N.D. Ill. 2009) (holding principles of efficiency and "judicial administration" weighed in favor of application of first-to-file rule).

These guiding principles for the first-to-file rule apply here, as both actions assert claims based on the same factual allegations on behalf of identical national classes of consumers. Thus, there is significant risk of inconsistent judgments interpreting the same set of facts and a guaranteed waste of resources should both this action and the *Friday* Action continue simultaneously. Indeed, the risks of inconsistent judgments and judicial inefficiency are particularly pronounced here where so many class representatives are attempting to represent classes all over the country against Nationstar with regard **to the exact same series of events**. For example, allowing all of these actions to proceed simultaneously would mean that cases brought by different plaintiffs' attorneys against Nationstar concerning identical factual issues would be proceeding on different discovery schedules, involving overlapping document productions and requiring fact and expert witnesses to sit for multiple depositions to address the same events.

Similarly, different plaintiffs' attorneys presenting different arguments to different courts regarding the same factual events could lead not only to inconsistent final judgments, but also inconsistent legal rulings on potential key issues such as whether Nationstar should be liable for the mistakes of a vendor under a theory of agency, whether class adjudication is appropriate, and whether a borrower has incurred injury at all if the amount of a mistaken debit is returned to the borrower's account before the borrower is aware of it. [2]

Accordingly, the Court should use its discretion to decline jurisdiction and apply the first-to-file rule here, dismissing this Action or, at minimum, staying it pending resolution of the *Friday* Action. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 889 (7th Cir. 2012) (affirming dismissal of later-filed class complaint under first-to-file rule).

## II.     PLAINTIFF'S COMPLAINT FAILS UNDER RULE 12(B)(6).

### A.     Plaintiff's negligence claim fails.

Plaintiff alleges that Nationstar was negligent in failing to prevent the unauthorized transfer and failing to take adequate action after the unauthorized transfer occurred. *See generally* Compl. ¶¶ 38-52. However, Plaintiff's negligence claim fails (i) because Illinois law does not recognize any duty in tort owed by mortgage servicers to customers, and (ii) because it is barred by the economic loss rule to the extent that Plaintiff seeks to recover economic losses.

1.     <u>Nationstar does not owe Plaintiff a common law duty in tort to safeguard her financial information.</u>

Plaintiff's claim for negligence fails because Plaintiff has not pled that Nationstar owed

---

[2] For these reasons, Nationstar has invoked the first-to-file rule in two other cases, seeking to dismiss those lawsuits with putative classes that are subsumed by the *Friday* Action putative class. *See Deveraux v. Nationstar*, C.D. Cal., Case No. 5:21-cv-873; *Miller v. Nationstar*, M.D. Fla., Case No. 8:21-cv-1349. Nationstar also intends to file first-to-file motions in *Keil v. Nationstar,* N.D.N.Y, Case No. 6:21-cv-00697-TJM-TWD and *Dehner v. Nationstar*, E.D. Mich., Case No. 1:21-cv-11460-TLL-PTM.

her any duty recognized by Illinois law. To state a claim for negligence under Illinois law, a plaintiff must allege "the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury." *Doe v. Coe*, 135 N.E.3d 1, 12 (Ill. 2019) (internal quotations and citations omitted). "Whether a duty exists is a question of law to be determined by the court." *Doe v. McKay*, 700 N.E.2d 1018, 1021 (Ill. 1998).

As a general rule, loan servicers do not owe a duty to the borrowers of the loans that they service outside of what is in the governing loan documents. *See, e.g. Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) (affirming dismissal of borrower's negligence claim against mortgage servicer); *Rideaux v. Travelers Ins. Co.*, 2013 WL 3354462, at *4–5 (N.D. Ill. July 1, 2013) (dismissing borrower's claims against mortgage servicers because the borrower "failed to allege the existence of any duty on [the] servicers' part"); *Sindles v. Saxon Mortg. Services, Inc.*, 2012 WL 1899401, at *7 (N.D. Ill. May 22, 2012) (dismissing negligent infliction of emotional distress claim where borrower failed to establish that mortgage servicer owed him a duty of care); *Pendolino v. BAC Home Loans Servicing, LP*, 2011 WL 3022265, at *4 (N.D. Ill. July 22, 2011) ("Because [servicer] owed [borrower] no duty of care under Illinois law, the court agrees that [borrower] has failed to state a claim for negligence and breach of fiduciary duty."); *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 902 (N.D. Ill. 2009) (dismissing borrower's negligence claims against lender because Illinois law does not "recognize a general duty of care owed by lenders to borrowers"); *Johnson v. Midland Career Inst.*, 1996 WL 54187, at *8 (N.D. Ill. Feb. 8, 1996) (dismissing borrower's negligence claim against servicer because borrower "failed to show any duty" owed by the servicer).

Plaintiff attempts to plead around this hurdle by alleging that (i) Nationstar owed her a duty to "utilize her financial information responsibility and appropriately" and (ii) the Illinois Personal

12

Information Privacy Act ("PIPA"), 815 ILCS 530/1, *et seq.* imposed a statutory duty on Nationstar to prevent the misuse of her financial information. Compl. ¶¶ 40, 41. However, Illinois law does not support either of these theories.

First, Plaintiff cannot establish a common law duty in tort. In *Cooney v. Chicago Pub. Sch.,* the Illinois Court of Appeals expressly declined to recognize a "new common law duty" to safeguard personal information. *See* 407 Ill. App. 3d 358, 363, 943 N.E.2d 23, 28-29 (2010). Accordingly, Plaintiff's allegation that Nationstar had a duty to utilize her financial information responsibly and appropriately and breached that duty when it "misused" her information fails. *See id.*; *see also Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 816 (7th Cir. 2018) (dismissing negligence claim, concluding "we predict that the state court would not impose the common law data security duty the plaintiff banks call for here").

Similarly, Plaintiff cannot establish a statutory duty sounding in negligence through PIPA. PIPA requires that a covered entity provide notice to Illinois residents affected by a data breach. *Cmty. Bank of Trenton,* 887 F.3d at 824. Given its limited scope, courts have held that PIPA does not create a statutory duty sounding in negligence to safeguard personal information. *See Cooney,* 943 N.E.2d at 28 (rejecting the theory that PIPA establishes any duty beyond providing notice of a security breach); *Cmty. Bank of Trenton*, 887 F.3d at 816 (applying *Cooney* to conclude there is no statutory duty under PIPA to safeguard personal information); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760 (C.D. Ill. 2020) (dismissing negligence claim and rejecting argument that defendant owed duty to maintain confidentiality and safeguard personal information under PIPA).

Thus, Plaintiff fails to allege that Nationstar owed her any duty in tort to safeguard her financial information, and her negligence claim must be dismissed for this reason.

2.     The economic loss rule bars Plaintiff's claim for economic losses.

Even if Plaintiff could establish that Nationstar owed her a duty in tort, her negligence claim still fails because it is barred by the economic loss rule. Also known as the *Moorman* doctrine in Illinois, the economic loss rule "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank*, N.A., 673 F.3d 547, 567 (7th Cir. 2012). In other words, tort liability under a negligence theory is not available where a contract governs the relationship between the parties and there is no personal injury or property damage. *Id.* [3]

First, Plaintiff's claims arise out of her loan agreement with her lender, and, therefore, the economic loss doctrine bars her from bringing a negligence claim for economic losses against Nationstar, her loan servicer. *Wigod*, 673 F.3d at 568 (affirming dismissal of borrower's negligence claims against loan servicer under the economic loss rule because "[t]o the extent Wells Fargo had a duty to service [borrower's] home loan responsibly…that duty emerged solely out of its contractual obligations"); *Bilek v. Bank of America, N.A.*, 2011 WL 209818, at *5 (N.D. Ill. Jan. 21, 2011) (dismissing borrower's gross negligence claim against loan servicer under the economic loss rule). Moreover, the fact that Plaintiff does not have a direct contract with Nationstar is irrelevant—the economic loss doctrine still applies because she seeks recovery for a loss allegedly arising out of a transaction related to the loan agreement. *See Cmty. Bank of Trenton*, 887 F.3d at 817 (dismissing negligence claim premised on allegation of breach of duty to safeguard

---

[3] Illinois recognizes three exceptions: for personal injuries or property damage resulting from sudden or dangerous occurrences, for fraud, and for negligent misrepresentations by professional business advisors. *Cmty. Bank of Trenton*, 887 F.3d at 813. Based on the face of the pleadings, none of those apply here.

personal information as barred by economic loss rule despite there being no contract between plaintiff and defendant).

Furthermore, the economic loss rule bars Plaintiff's claim **in its entirety** because Plaintiff alleges **only** economic loss. Specifically, she claims she (i) lost time she could have spent working to tracking her account balance; (ii) received reduced interest in her interest-bearing account; and (iii) had "little to no money for other necessary expenses." Compl. ¶¶ 12, 23-26. While she also claims she suffered "mental and emotional anguish," under Illinois law, "a direct victim may not recover for emotional distress suffered as a result of the defendant's alleged negligence unless the emotional distress 'was accompanied by a contemporaneous physical injury to or impact on the plaintiff.'" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009) (quoting *Rickey v. Chicago Transit Auth.*, 98 Ill.2d 546, 550, 457 N.E.2d 1, 2 (1983)). Because Plaintiff does not allege she suffered a contemporaneous physical injury or impact, she cannot circumvent the economic loss rule through boilerplate allegations of emotional distress. *See Integra Healthcare, S.C. v. APP of Illinois HM, PLLC*, No. 18 C 3589, 2019 WL 3766122, at *4 (N.D. Ill. Aug. 9, 2019) (dismissing negligence claim as barred by economic loss rule where plaintiff alleged emotional distress but failed to allege any direct impact or injury).

Accordingly, Plaintiff's negligence claim fails and must be dismissed.

### B. Plaintiff fails to state a claim for trespass to chattels.

Next, Plaintiff alleges a claim for trespass to chattels based on her bare legal conclusion that she had "possession" of the money in her bank account that Nationstar allegedly wrongfully withdrew. Compl. ¶ 59. However, this claim fails because she alleges no facts supporting her legal conclusion that she had possession of or the right to immediately possess the funds.

Whereas conversion is the wrongful interference with ownership rights, "[t]respass to chattels involves an injury to or interference with possession of personal property." *Glen Ellyn Pharmacy, Inc. v. Kloudscript, Inc.*, 2019 WL 6467319, at *3 (N.D. Ill. Dec. 2, 2019). As such, a plaintiff can only state a claim for trespass to chattels where the plaintiff had the "right to immediate possession" of the subject property. *Minuti v. Johnson*, 2003 WL 260705, at *4 (N.D. Ill. Feb. 5, 2003).

Here, Plaintiff alleges no facts or basis for a plausible inference that she had possession over the funds in her bank account, or even the right to immediately possess those specific funds. Under Illinois law, "[w]hen money is deposited with a bank, title to it passes and the bank becomes a debtor to the extent of the deposit and, to that extent, the depositor becomes a creditor." *Cont'l Cas. Co., Inc. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 768 N.E.2d 352, 357–58 (Ill. App. Ct. 2002); *see also Secure Leverage Grp., Inc. v. Bodenstein,* 558 B.R. 226, 235 (N.D. Ill. 2016) ("For example, when a customer deposits money into a bank, under Illinois law, the customer has transferred ownership of those funds to the bank."); *Durkee v. Franklin Sav. Ass'n,* 309 N.E.2d 118, 120 (Ill. App. Ct. 1974) ("[T]he moment the money is deposited it actually becomes the property of the bank."). Consequently, Plaintiff relinquished title to the money once she placed it into the bank account, and the Complaint does not—and cannot—allege she had an immediate right of possession of those specific funds. Rather, under Illinois law, the depository institution possessed the funds and simply incurred an obligation to Plaintiff in the same amount as what she deposited. *Continental Cas. Co., Inc*, 768 N.E.2d at 357–58. As Plaintiff has failed to identify any specific chattel that Plaintiff had possession of or the immediate right to possess, Plaintiff's trespass to chattels claim fails and must be dismissed.

**C.    Plaintiff fails to state a claim for breach of fiduciary duty.**

Plaintiff also asserts a claim for breach of fiduciary duty based on Nationstar's alleged act of initiating the additional debit in April 2021.  Compl.  ¶ 80.  However, Plaintiff's claim for breach of fiduciary duty fails because she has not alleged any facts that would provide a basis to depart from the rule that no fiduciary duty exists between a debtor and creditor absent extraordinary circumstances.

1.    <u>Banks do not owe borrowers fiduciary duties absent extraordinary circumstances.</u>

Under Illinois law, to state a claim for breach of fiduciary duty, "it must be alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains."  *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000).  Fiduciary relationships only exist "when there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence."  *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015) (internal quotations and citations omitted).

Illinois courts have repeatedly held that ordinary debtor-creditor relationships do not rise to the level of a fiduciary relationship.  *See Jones v. Countrywide Home Loans, Inc.*, 2010 WL 551418, at *5 (N.D. Ill. 2010) ("A debtor-creditor relationship is not a fiduciary one as a matter of law"); *Graham v. Midland Mortg. Co.*, 406 F. Supp. 2d 948, 953 (N.D. Ill. 2005) ("Under Illinois law, a mortgagor-mortgagee relationship does not create a fiduciary relationship as a matter of law.") (internal quotations and citations omitted); *In re Olde Prairie Block Owner, LLC*, 441 B.R. 298, 307 (Bankr. N.D. Ill. 2010) (dismissing debtor's fiduciary duty claim because debtor "did not demonstrate a fiduciary relationship" between itself and its creditor); *In re Gluth Bros. Const., Inc.*, 424 B.R. 379, 391 (Bankr. N.D. Ill. 2009) ("Normally, a lender owes no fiduciary duty to a

17

debtor, since parties to a contract are not each other's fiduciaries; they are not bound to treat the other parties with consideration for their interests.") (internal quotations and citations omitted); *Teachers Ins. & Annuity Ass'n of Am. v. LaSalle Nat. Bank*, 691 N.E.2d 881, 888–89 (Ill. App. Ct. 1998) (holding "typical lender-borrower relationship" does not create a fiduciary relationship).

Because the primary role of a mortgage servicer is to collect payments from the borrowers to pay off their loan, courts have applied this rationale to hold that mortgage servicers do not owe borrowers fiduciary duties either. *See, e.g. Elesh v. Ocwen Loan Servicing, LLC*, 2013 WL 1707934, at *2 (N.D. Ill. Apr. 19, 2013) ("There is nothing inherent in business dealings between a loan servicer and a borrower from which springs a cognizable fiduciary relationship.") (internal quotations and citations omitted); *Pendolino*, 2011 WL 3022265, at *4 ("Because [servicer] owed [borrower] no duty of care under Illinois law, the court agrees that [borrower] has failed to state a claim for negligence and breach of fiduciary duty.").

### 2. Plaintiff's Complaint fails to identify any extraordinary circumstances that would establish a fiduciary duty.

Although a bank is generally not considered a fiduciary of its borrower, in rare circumstances a "fiduciary duty may arise 'on an ad hoc basis' where an individual or entity solicits another to trust him in matters in which he represents himself to be expert as well as trustworthy and the other is not expert and accepts the offer and reposes complete trust in him." *Jones*, 2010 WL 551418, at *5 (quotation omitted). To establish this extraordinary duty, a plaintiff must show "trust and confidence are reposed by one person in another who, as a result thereof, gains influence and superiority over the other." *Tummelson v. White*, 47 N.E.3d 579, 584 (Ill. App. Ct. 2015). Thus, a showing that the defendant exercised "[s]ignificant dominance and superiority" is required. *Id.* Further, it is not enough to allege simply that Plaintiff confided in Nationstar. *See id.* ("But trust and confidence are not enough to create a fiduciary relationship."); *see also Asian Hum. Servs.*

18

*Fam. Health Ctr., Inc. v. Asian Hum. Servs., Inc.*, 166 N.E.3d 791, 796 (Ill. App. Ct. 2020) ("Trust and confidence are not enough to create a fiduciary relationship; *superiority and influence* must *result* from the trust and confidence.").

Absent such facts, no fiduciary duty will lie.  *See Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992) (reasoning that lenders do not owe fiduciary duties to borrowers because the "essence of a fiduciary relationship is that one party is dominated by the other"); *Stern v. Great W. Bank,*, 959 F. Supp. 478, 487 (N.D. Ill. 1997) (holding that traditional mortgagor-mortgagee relationship did not involve "any dominance" and thus was not "a fiduciary relationship").

Here, Plaintiff attempts to elevate her routine borrower/servicer relationship with Nationstar to one creating a fiduciary duty by alleging (i) a portion of her monthly loan payments would be held in escrow and (ii) she provided financial information to Nationstar to allow it to process their loan payments.  Compl.  ¶¶ 75-82.  However, neither of these circumstances is sufficient to establish a fiduciary duty in this case.

          i.      *Plaintiff's allegations regarding escrow accounts do not establish a fiduciary duty.*

While Plaintiff is correct that courts have held that a fiduciary duty can arise in certain contexts involving escrow accounts, *see* Compl. ¶ 74, in the mortgage servicing context these cases involve scenarios where the borrower opens an escrow account, placing reliance on the financial institution to apply payments properly for the purposes of keeping property tax and insurance obligations current, and the financial institution fails to do so—causing the borrower to default on those obligations.  *See, e.g. Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 875 (N.D. Ill. 2002) (holding mortgage contract gave rise to a fiduciary relationship where servicer-escrowee failed to properly pay taxes); *Choi v. Chase Manhattan Mortg. Co.*, 63 F. Supp. 2d 874 (N.D. Ill.

19

1999) (holding borrower sufficiently alleged existence of fiduciary relationship between it and servicer, in the escrow context, where servicer's failure to pay required taxes led to the sale of the borrower's home).  These cases arise out of escrowees' duty "to act only in accordance with the escrow instructions."  *See Int'l Cap. Corp. v. Moyer,* 347 Ill. App. 3d 116, 123, 806 N.E.2d 1166, 1172 (2004).  This makes sense, as in the context of loan servicing, the loan servicer has the exclusive ability to keep tax and insurance payments current.

Contrastingly, here, Plaintiff does not allege that she provided funds to Nationstar with the expectation that Nationstar would use them to keep property tax and/or insurance obligations current and that Nationstar failed to do so.  In fact, Plaintiff does not even allege that the erroneously debited funds were ever actually placed into her escrow account with Nationstar prior to being returned.  Rather, she simply alleges that "[s]ince a portion of Plaintiff's . . . monthly Loan Payment[ ] was to be held in escrow by Defendant for the purposes of, *inter alia*, paying for homeowner's insurance and real estate taxes . . . Defendant owed a fiduciary duty to Plaintiff." Compl.  ¶ 77.  Plaintiff makes no allegation that Nationstar failed to follow escrow instructions. According, this allegation is not nearly sufficient to bring these allegations regarding erroneous debits within the narrow body of fiduciary duty law regarding the failure to properly apply money being held in escrow, and it cannot save Plaintiff's breach of fiduciary duty claim here.

ii.   *Plaintiff's allegations regarding providing financial information do not establish a fiduciary duty.*

Similarly, Plaintiff's allegation that she "provided Defendant with the financial information necessary to process [her] Loan Payment" likewise fails to create a fiduciary duty. Compl. ¶ 78.  Processing payment transactions is a common occurrence in the context of a borrower-servicer relationship, often via electronic means.  These routine forms of payment between borrowers and mortgage servicers contemplate that borrowers regularly provide account

information to their servicers or their vendors in order to facilitate payments, so this cannot be the distinguishing factor that creates some extraordinary duty above and beyond what a servicer typically owes. *See* Section II.C.1., *supra*. Indeed, "there is nothing inherent in business dealings between a [loan servicer] and a borrower from which springs a cognizable fiduciary relationship." *Elesh*, 2013 WL 1707934, at *2 (quoting *Citicorp Sav. of Ill. v. Rucker*, 295 Ill. App. 3d 801, 230 Ill. Dec. 153, 692 N.E.2d 1319, 1325-26 (1998)). Accordingly, Plaintiff has not identified any special facts that elevate her relationship with Nationstar above that of a normal borrower-servicer relationship, and, for this reason, her breach of fiduciary duty claim fails and must be dismissed.

### D.     Plaintiff fails to state a RESPA claim.

Plaintiff next brings a RESPA claim under "Regulation X," codified as 12 C.F.R. § 1024.1. Compl. ¶ 90. Plaintiff alleges that, in making erroneous debits, Nationstar collected more than the maximum allowable amount for monthly escrow payments established by 12 C.F.R. § 1024.17. Compl. ¶ 98. However, Plaintiff's claim fails here because there is no private right of action to bring a claim under this provision of Regulation X. Furthermore, even if Plaintiff could bring a claim under 12 C.F.R. § 1024.17, she has failed to allege that any of the amounts erroneously debited were actually applied to her escrow account as escrow payments.

Only certain provisions of RESPA, such as 12 U.S.C. § 2605, bestow a private right of action on individuals. *Chancellor v. Bank of Am. N.A.*, 2015 WL 5730103, at *5 (N.D. Ill. Sept. 29, 2015). Section 2605 requires loan servicers "to respond promptly to borrowers' requests for information relating to the servicing of a loan." *Id.* Contrastingly, the provision of Regulation X that Plaintiff bases her claim on, 12 C.F.R. § 1024.17(c)(1)(ii), is promulgated under 12 U.S.C. § 2609 (as Plaintiff acknowledges in her pleading). Compl. ¶ 94. This is fatal to her claim, because Section 2609, unlike Section 2605, does **not** confer a private right of action. *See Cybulski v.*

21

*Nationstar Mortg. LLC*, 2018 WL 4144632, at *4 (N.D. Ill. Aug. 30, 2018) (dismissing claim asserted under 12 C.F.R. § 1024.17 due to lack of private right of action in 12 U.S.C. § 2609).[4]

Indeed, this Court has already addressed this precise issue. In *Cybluski*, the plaintiffs asserted that Nationstar violated 12 C.F.R. § 1024.17 by failing to return excess escrow funds to the correct address. *Id.* at *3. The Court dismissed their claim, concluding that 12 C.F.R. § 1024.17 was a recodified version of 24 C.F.R. § 3500.17, which was promulgated under Section 2609 and, therefore, does not provide a private right of action. *Id.*

Here, like in *Cybluski*, Plaintiff argues that a violation of 12 C.F.R. § 1024.17 is actionable. First, as explained in *Cybluski*, there is no private right of action under Section 2609. *Id.* at *4. For this reason alone, Plaintiff's RESPA claim must be dismissed. *Id.* Second, to the extent that Plaintiff attempts to allege that 12 C.F.R. § 1024.17 is actually codified under Section 2605 and is, therefore, actionable, this argument was also rejected in *Cybluski*. *Id.* at *5-6. Specifically, the Court in *Cybluski* noted that Section 2605 requires loan servicers to respond promptly to borrowers' requests for information relating to the servicing of a loan, whereas the plaintiffs' complaint asserted only a failure to return escrow funds, not a failure to respond to a request for information. *Id.* That is precisely the case here, where Plaintiff's allegations only relate to Nationstar allegedly collecting more than the maximum allowable monthly escrow payment.

---

[4] 12 U.S.C. § 2609 is part of Section 10 of RESPA, and it is well-settled that Congress did not intend to create a private right of action under Section 10. *See also Allison v. Liberty Sav.*, 695 F.2d 1086, 1087 (7th Cir. 1982) ("[W]e hold that there is no private right of action under § 10 of RESPA."); *see also Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1358 (11th Cir. 2006) (finding that a failure to comply with 24 C.F.R. § 3500.17 is a violation of RESPA Section 10, and violations of Section 10 are only enforceable by the HUD Secretary); *State of La. v. Litton Mortg. Co.*, 50 F.3d 1298, 1304 (5th Cir. 1995) ("Congress did not intend to create a private right of action under Section 10 of RESPA."); *McAndrew v. Deutsche Bank Nat. Tr. Co.*, 977 F. Supp. 2d 440, 447 (M.D. Pa. 2013) ("[T]he court finds that section 2609 fails to contain a private right of action.").

Compl. ¶ 98.  Plaintiff does not allege that Nationstar failed to respond to any inquiry in violation of Section 2605.  Accordingly, Section 2605 does not apply, and Plaintiff's RESPA claim must be dismissed.

Furthermore, even if 12 C.F.R. § 1024.17 did bestow a private right of action—which it does not—Plaintiff has failed to set forth facts demonstrating that Nationstar violated it.  While Plaintiff alleges that a portion of her routine loan payments included money to be held in escrow by Nationstar, Compl. ¶ 96, she does not allege that the erroneous debit (or any portion thereof) was transferred into her escrow account prior to being returned.  Accordingly, Plaintiff has not alleged that any portion of the erroneous debit was charged for escrow, and has failed to allege a substantive violation of 12 C.F.R. § 1024.17.

For these reasons, Plaintiff's RESPA claim fails and must be dismissed.

### E.     Plaintiff fails to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act.

Finally, Plaintiff alleges that Nationstar violated the ICFA through using her financial information to initiate the erroneous debit.  Compl. ¶ 109.  Plaintiff's ICFA claim fails, however, because she fails to plausibly and specifically allege that Nationstar acted with the requisite intent and further fails to allege any "unfair" conduct by Nationstar.

"The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce."  *Wigod*, 673 F.3d at 574 (quotation omitted).  Plaintiff's ICFA claim is based on allegations of unfair conduct.  Compl.  ¶ 107.  For a business practice to be considered unfair, the Court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to

consumers." *Overstreet v. CIT Mortg. Home Loan Tr. 2007-1*, 2017 WL 1022079, at *4 (N.D. Ill. Mar. 16, 2017).

        1.      <u>Plaintiff fails to allege Nationstar acted with intent.</u>

As an initial matter, Plaintiff fails to allege any facts demonstrating that Nationstar intended to make the unauthorized withdrawal from Plaintiff's bank account. No allegations in the Complaint address Nationstar's intent to withdraw funds (or cause its alleged agent to withdraw funds) from Plaintiff's account without permission. Accordingly, Plaintiff has thus failed to plead all elements of a claim for violation of the ICFA, and Count V must be dismissed. *Eul v. Transworld Sys.*, 2017 WL 1178537, at *20 (N.D. Ill. Mar. 30, 2017) (dismissing ICFA claim for failure to allege intent, noting "Plaintiffs' allegations in Count VII do not at all address Defendants' intent, and Plaintiffs identify no other allegations in the complaint that do"); *Garrett v. RentGrow, Inc.*, 2005 WL 1563162, at *4 (N.D. Ill. July 1, 2005) (dismissing ICFA claim in part for failure to allege intent by the defendant to be unfair or deceive where defendant relied on allegedly incorrect information in a background report provided by third party to deny rental application).

        2.      <u>Plaintiff fails to allege any "unfair" conduct by Nationstar.</u>

Furthermore, Plaintiff's ICFA claim fails because she has not alleged that Nationstar engaged in any "unfair" conduct. Plaintiff asserts that Nationstar's conduct was unfair because the conduct allegedly violated PIPA, unlawfully interfered with her possession of chattel, and violated RESPA. Although Plaintiff alleges damages for lost interest and emotional distress, she does not seek to recover the amount withdrawn or otherwise allege that Nationstar still wrongfully retains her funds. The only reasonable inference that can be drawn from such an omission is that Nationstar does not still possess the funds. Because the Complaint does not allege Nationstar failed to return Plaintiff's funds, her allegations are insufficient to state a claim for unfairness under the ICFA. Indeed, the Illinois Court of Appeals has affirmed dismissal of an ICFA claim premised

on overcharging where the defendant promptly refunded the charges when notified. *See Uchacz v. Gov't Emps. Ins. Co.*, 2003 WL 21018653, at *2 (N.D. Ill. May 5, 2003) ("The facts of the instant case fail to support Plaintiff's claim. The Bank initially allowed the transfer of funds to GEICO on April 5, 2002. After Plaintiff notified the Bank that the transfer of funds had not been authorized, the Bank took corrective action and provisionally credited Plaintiff's account."); *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207, 210, 681 N.E.2d 6, 8 (1997) (affirming dismissal of unfairness claim under ICFA based on mistaken overcharging where store provided receipt to customer "enabling her to check whether she has been correctly charged," and refunded charges on request," finding "an absence of the oppressiveness and lack of meaningful choice necessary to establish unfairness"). Accordingly, Plaintiff's ICFA claim fails and must be dismissed.

## CONCLUSION

WHEREFORE, Nationstar respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety, as: (1) Plaintiff's negligence claim fails because (i) she fails to plead that Nationstar owed her any cognizable duty under Illinois law, and (ii) the economic loss rule bars her claim in its entirety; (2) Plaintiff's trespass to chattels claim fails because Plaintiff failed to plead facts establishing possession of the funds that Nationstar allegedly withdrew; (3) Plaintiff's breach of fiduciary duty claim fails because Plaintiff has not pled facts sufficient to overcome the rule in Illinois that banking institutions do not owe borrowers a fiduciary duty absent extraordinary circumstances; (4) Plaintiff's RESPA claim fails because Plaintiff's allegations fall under 12 U.S.C. § 2609, which does not create a private right of action; and (5) Plaintiff's ICFA claim fails because Plaintiff has not and cannot plead the requisite intent.

25

Date: September 7, 2021

Respectfully submitted,

MCGUIREWOODS LLP

/s/ *Benjamin H. Cook*
Benjamin H. Cook
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Telephone: (312) 750-3579
Facsimile: (312) 698-4565
bcook@mcguirewoods.com

*Attorney for Defendant Nationstar Mortgage
LLC d/b/a Mr. Cooper Group*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7<u>th</u> <u>day of September 2021</u>, the foregoing <u>NATIONSTAR</u>

<u>MORTGAGE LLC d/b/a MR. COOPER GROUP'S MEMORANDUM IN SUPPORT OF ITS</u>

<u>MOTION TO DISMISS</u> was filed with the Court using the CM/ECF system which will

automatically serve all attorneys of record via the Courts CM/ECF System.


/s/ *Benjamin H. Cook*
Benjamin H. Cook


27